JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
JOSHUA PATASHNIK (State Bar No. 295120)
josh.patashnik@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California  94105-4000
Telephone:   (415) 512-4000
Facsimile:    (415) 512-4077

JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
ALEXANDRA P. SUMMER (SBN 266485)
asummer@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
2716 Ocean Park Blvd., Suite 3088
Santa Monica, CA  90405
Telephone:   (310) 392-2008
Facsimile:    (310) 392-0111

Attorneys for Plaintiff Airbnb, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HOMEAWAY.COM, INC., and AIRBNB, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SANTA MONICA,<br><br>Defendant. | Case Nos. 2:16-cv-6641, 2:16-cv-6645<br><br>**DECLARATION OF DAVID OWEN IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: February 26, 2018<br>Hearing Time: 1:30 p.m. |

# DECLARATION OF DAVID OWEN

I, David Owen, declare as follows:

1. I am Head of Policy Strategy for Airbnb, Inc. ("Airbnb"). I am over the age of 18 years and maintain an office at 888 Brannan Street, 4th Floor, San Francisco, CA 94103. I have personal knowledge of the matters set forth in this declaration, and if called as a witness, I could and would testify under oath as follows.

## The Airbnb Platform and Santa Monica

2. Airbnb was founded in 2008. Airbnb provides an Internet platform and online marketplace through which third parties listing their accommodations ("hosts") and third parties desiring to book accommodations ("guests") can locate each other, communicate with each other, and enter into direct agreements to reserve and book travel accommodations on a short and long-term basis.

3. Airbnb's Internet website, located at www.airbnb.com, provides a means by which interested parties can choose to list their accommodations, a means by which hosts and guests can locate and connect with each other, a means for them to communicate and message one another directly on the platform and determine the material terms for their bookings, and also enables the provision of payment processing services to permit hosts to receive payments electronically (similar to payment processing services for third-party transactions offered by websites such as eBay, StubHub, Amazon, and Etsy).

4. Airbnb does not charge hosts any upfront fees at the time they post their listings. In consideration for use of the platform services, including its publication services, Airbnb receives a service fee from the guest and the host, which is determined as a percentage of the accommodation fee set solely by the host. Not charging hosts an upfront fee for listing their rentals removes barriers to entry and makes it more likely for hosts to post their listings on Airbnb.

5. Airbnb has no possessory interest in any of the property or accommodations that third-party hosts may list on the Internet platform. Airbnb therefore is not a proprietor, owner or operator of any accommodation offered by hosts on the Internet platform. Airbnb does not manage, operate, lease or own hosts' accommodations, and it is not a party to the direct agreements between guests and hosts for the booking of rentals offered by hosts.

6. A true and correct copy of Airbnb's Terms of Service, available at https://www.airbnb.com/terms, is attached hereto as Exhibit A. All users of Airbnb must accept and consent to the Terms of Service in order to post listings on the site or to book reservations. As the Terms of Service state, Airbnb "does not own, create, sell, resell, provide, control, manage, offer, deliver, or supply any Listings or Host Services."

7. Hosts, and not Airbnb, decide whether to list their properties and when to make them available on their calendars. Hosts also set their prices and material terms and decide with whom and when to transact. Airbnb has no control over the physical properties, does not have the right to book or resell or remarket any accommodations for any host, and does not set or otherwise determine the rental price of the accommodations or other terms like security deposits or cleaning fees.

8. Hosts create, and are responsible for, the content that is contained in each individual rental advertisement. As the Terms of Service (Exhibit A) state, hosts "alone are responsible for their Listings and Host Services." Hosts provide the descriptions of their accommodations, set the length of stay of any particular rental, determine the prices and whether the entire property or a portion thereof is available for booking, and decide when and with whom they want to enter into agreements. Hosts also input the minimum and/or maximum days of stay for a particular rental. Airbnb does not control the content that is created by hosts and is not responsible for it. As a general matter, Airbnb does not review the hundreds of thousands of hosts' listings before the listings appear on Airbnb's marketplace. Rather, the process for

listing properties is automated, and once the host provides listing information, the listing appears on the Airbnb marketplace almost immediately.

9. Airbnb advises hosts and guests to be aware of applicable local laws in listing properties and making reservations on the site. For example, the Terms of Service (Exhibit A) state that "Hosts alone are responsible for identifying, understanding, and complying with all laws, rules and regulations that apply to their Listings . . . ."

10. In addition, when hosts go through the process of creating listings in Santa Monica on Airbnb, they are cautioned to "familiarize [themselves] with [their] local laws" and informed that "[m]any places have rules covering homesharing, and the specific codes and ordinances can appear in different locations (such as zoning, building, licensing or tax codes)." They are also informed that "[m]any locales require registration, a permit or a license before properties can be listed or guests can be accepted" and that they "may also be responsible for collecting and remitting certain taxes." A true and correct copy of this webpage displayed to hosts during the listing creation process is attached hereto as Exhibit B.

11. Airbnb also maintains a "Responsible Hosting" section on the Airbnb website. Airbnb provides a variety of general information for hosts about applicable laws and regulations that they should follow, including safety guidelines and property regulations. A true and correct copy of the "Responsible Hosting in the United States" webpage, available at https://www.airbnb.com/help/article/1376/responsible-hosting-in-the-united-states, is attached hereto as Exhibit C.

12. Airbnb has a specific page from its "Responsible Hosting" website for Santa Monica that provides information about Santa Monica's laws and regulations. The page references "Santa Monica's Home-Sharing Ordinance," and provides a link to the City's website for more information. It states that "it's important for you to understand the laws in your city," and that under the Ordinance, "Hosted rentals,"

where "at least one of the primary residents lives on site throughout the visitor's stay," are "allowed for 30 days or less."  It also states that "[t]he law requires a business license, taxes and compliance with other health and safety laws."  The page notes that "You may include your business license number on your listing" in the "'License or registration number' field" by "typ[ing] in your permit number following the acceptable permit format for Santa Monica.  The format is: xxxxxx.  An example would be: 123456."  The page further states that "Un-hosted rentals (Santa Monica calls vacation rentals) are prohibited unless they are 30 days and longer.  If a primary resident is not living on site throughout the stay, Santa Monica's law prohibits short-term rental."

13. A true and correct copy of the Airbnb webpage entitled "Santa Monica, CA," available at https://www.airbnb.com/help/article/908/santa-monica--ca, is attached hereto as Exhibit D.

14. As part of its Community Compact, Airbnb is committed to helping provide solutions tailored to the needs of cities.  For example, Airbnb discretionarily removes listings from its website that Airbnb believes may be offered by hosts with multiple entire home listings or by unwelcome commercial operators.  A true and correct copy of the Airbnb webpage describing its Community Compact is attached hereto as Exhibit E, available at https://www.airbnbaction.com/wp-content/uploads/2015/11/Airbnb-Community-Compact.pdf.

### Homesharing in Santa Monica

15. At present, there are approximately 1,400 listings for rentals in Santa Monica on Airbnb's marketplace.  Among Airbnb hosts in Santa Monica, 82% have only one listing on the marketplace.

16. According to a report discussing Airbnb's economic impact in neighboring Los Angeles (a true and correct copy of which is attached as Exhibit F), 13% of Airbnb hosts in Los Angeles report that their income from hosting prevented them from losing their homes to foreclosure, and another 10% of hosts report that

their income from hosting saved them from eviction. At that rate, nearly 3,000 Los Angeles hosts have avoided foreclosure or eviction due to the supplemental income they make from hosting on Airbnb. The typical Los Angeles host earned an additional $7,200 per year from hosting on Airbnb. In addition, Airbnb generated more than $1.1 billion in economic activity in Los Angeles in 2016.

17. Airbnb has also collected and remitted more than $42 million in taxes to the City of Los Angeles over the past year alone, and stands to collect and remit $2 billion or more in taxes over the next decade to the 50 largest U.S. cities.

18. Airbnb listings provide an economical and convenient way for many travelers to experience the Santa Monica coast. Many of Airbnb's listings are within Santa Monica's "Coastal Zone," which I understand "extend[s] inland generally 1,000 yards from the mean high tide line of the sea." Cal. Pub. Res. Code § 30103(a). Over the past two years, approximately 30% of Airbnb listings within Santa Monica have been located in the Coastal Zone.

**The Ordinance**

19. I understand that Ordinance No. 2535 (the "Ordinance") imposes criminal and civil liability on hosting platforms for completing any "booking transaction" in connection with any third-party listing for a short-term rental on Airbnb's platform located in the City of Santa Monica (the "City") if that rental is not listed on the City's registry. I understand that to comply with the Ordinance and be listed on the registry, all short-term rentals in the City must be "hosted" (where at least "one of the dwelling unit's primary residents lives on-site" during the rental), must have a valid business license from the City of Santa Monica, and must comply with all other law applicable to short-term rentals, including all health, safety, building, fire protection, and rent control laws. I understand that a residential rental for 30 days or less that does not meet these requirements does not constitute lawful "Home-Sharing" under the Ordinance and instead is an unlawful "Vacation Rental."

20. I understand that failure to comply with the Ordinance may result in hosting platforms facing civil penalties of up to $250 per violation and criminal penalties of up to $500 and/or up to six months imprisonment per violation, as well as administrative fines and penalties.

21. Compliance with the Ordinance would require Airbnb to do one of two things, either of which would cause significant harm to Airbnb.

22. First, Airbnb could monitor and screen listings to ensure that no booking transactions between hosts and guests occur for short-term rentals in Santa Monica that are not listed on the City's registry. In theory, this could be done either prior to publishing each host's listing, or after publication but prior to processing the payment and transaction for the listing. However, this latter option is not viable from a business standpoint. The Airbnb website would be highly confusing if it were populated by listings that guests could not actually book. In addition, hosts and guests greatly value being able to enter into transactions immediately upon locating each other and agreeing on reservation terms. This would no longer be possible if Airbnb had to screen listings prior to payment and transaction processing to ensure that the rental is listed on the City's registry.

23. Thus, if Airbnb is to continue to process booking transactions for reservations in Santa Monica, Airbnb would have to monitor and screen listings prior to publication, and remove listings, to avoid the risk of the significant criminal and civil penalties discussed above. In order to monitor and screen listings, Airbnb would be forced to alter the functionality of its website in a way that would render it less desirable for users. A host seeking to create a listing would no longer be able to have it published immediately (because the listing would need to be screened), which would slow the process of creating a listing and make Airbnb's marketplace less desirable to both hosts and guests.

24. This process would also cause a significant disruption to Airbnb's operations and impose substantial personnel and other costs on Airbnb (particularly

if other cities replicated Santa Monica's regulatory model and enacted similar requirements). This disruption would also injure the significant business goodwill that Airbnb has generated from the hosts and guests who have come to rely on its platform.

25. As noted above, there are at present approximately 1,400 Airbnb listings located in Santa Monica. In the normal course of business, hosts add new listings, change the status of listings, and deactivate listings continually. Accordingly, the burden to Airbnb of complying with the Ordinance's requirements is not solely measured by the static number of listings at a single point in time, but would be an ongoing and expanding burden.

26. In the alternative, Airbnb could stop providing payment and transaction processing services altogether in connection with all third-party listings in Santa Monica. Airbnb currently provides booking, calendaring, and payment processing services in connection with all of the listings on its platform. In order to stop providing those services, Airbnb would have to undertake a fundamental redesign of its business model, website, and platform. Further, no longer providing those services would harm users. Hosts and guests greatly value using Airbnb's services to facilitate payment and calendaring of rentals for listings published on Airbnb's site. In the modern world of e-commerce, users simply expect that they will be able to enter into transactions online for goods and services advertised on platforms like Airbnb. They do not expect to view listings they are unable to book. Were Airbnb no longer able to offer these services with respect to certain listings, many hosts and guests likely would be confused and angered by the change and might even stop using Airbnb's platform altogether.

**The City's Past Enforcement Efforts and Airbnb's Responses**

27. Since the Ordinance was enacted, the City has sent Airbnb several letters regarding purported violations of the Ordinance with attached citations, and Airbnb has responded to those letters and citations. I have reviewed the letters and

citations from the City received by Airbnb, and Airbnb's responses to those letters and citations.

28. Attached hereto as Exhibit G is a true and correct copy of a letter received by Airbnb from the Code Enforcement Division of the Santa Monica Planning and Community Development Department, dated September 22, 2015.

29. Attached hereto as Exhibit H is a true and correct copy of a letter Airbnb sent to Sharon Guidry, Code Enforcement Manager at the Planning and Community Development Department for the City of Santa Monica, on or about October 22, 2015, which included checks for the payment of the fines listed in the City's September 22, 2015 letter.

30. Attached hereto as Exhibit I is a true and correct copy of a letter received by Airbnb from the Code Enforcement Division of the City of Santa Monica Planning and Community Development Department, dated October 29, 2015.

31. Attached hereto as Exhibit J is a true and correct copy of a letter Airbnb sent to Sharon Guidry, Code Enforcement Manager at the Planning and Community Development Department for the City of Santa Monica, on or about November 25, 2015, which included checks for the payment of the fines listed in the City's October 29, 2015 letter.

32. Attached hereto as Exhibit K is a true and correct copy of a letter received by Airbnb from the Code Enforcement Division of the City of Santa Monica Planning and Community Development Department, dated December 16, 2015, and attaching Citation Number 15CIT-709.

33. Attached hereto as Exhibit L is a true and correct copy of a letter received by Airbnb from the Code Enforcement Division of the City of Santa Monica Planning and Community Development Department, dated December 16, 2015, and attaching Citation Number 15CIT-711.

DECLARATION OF DAVID OWEN IN SUPPORT OF PLAINTIFFS' AMENDED MOT. FOR PRELIM. INJ.

34. Attached hereto as Exhibit M is a true and correct copy of a letter Airbnb sent to Sharon Guidry, Code Enforcement Manager at the Planning and Community Development Department for the City of Santa Monica, on or about January 15, 2016, which included checks for the payment of the citations listed in the City's December 16, 2015 letters.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 13th day of December, 2017 in San Francisco, California.

By: 

DAVID OWEN

-9-
DECLARATION OF DAVID OWEN IN SUPPORT OF PLAINTIFFS' AMENDED MOT. FOR PRELIM. INJ.