# EXHIBIT A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

**MDA City Apartments, LLC,**

**Plaintiff,**

**v.**

**Airbnb, Inc.,** *et al.*,

**Defendants.**

Case No. 17 CH 9980

Judge Moshe Jacobius

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendants' Airbnb, Inc. ("Airbnb") and Airbnb Payments, Inc. ("Airbnb Payments")(collectively for purposes of this motion "Airbnb Defendants") Motion to Dismiss under 735 ILCS 5/2-615 ("MTD"). The Court has reviewed the foregoing motion, as well as the Memorandum of Airbnb Defendants in Support of their §2-615 Motion to Dismiss ("Mem. MTD"), MDA City Apartments, LLC's Response in Opposition to Airbnb, Inc. and Airbnb Payments, Inc.'s §2-615 Motion to Dismiss ("Resp. MTD"), and Airbnb Defendants' Reply in Support of their §2-615 Motion to Dismiss ("Reply MTD"). The Court has also reviewed the relevant statutory and case law.

### I.     Background

Plaintiff, MDA City Apartments, LLC ("MDA"), owns a luxury, high-rise apartment building located at 63 East Lake Street in Chicago, Illinois (the "Property"). (Compl. at 1.)

1

**Exhibit A**
**4**

MDA's standard lease agreement prohibits renting and subletting units without MDA's consent. (*Id.*) MDA states that its property manager, Village Green Management Company ("Village Green"), has also reiterated that MDA has a policy against permitting its tenants to use Airbnb. (*Id.* at 6.) Despite this prohibition, MDA alleges that Defendant TempHomes Chicago, LLC ("TempHomes") and other tenants at the Property have unlawfully sublet and/or rented their units for profit using short-term vacation rental services including those offered by Airbnb. (*Id.* at 1.)

TempHomes is a short-term vacation rental company that provides temporary living and corporate housing to people looking for long-term or short-term furnished housing. (*Id.* at 5.) TempHomes' website advertises the Property as a location with available rentals: the advertisement also contains a description and picture of the Property. (*Id.*) On October 10, 2016 and June 30, 2017, MDA sent letters to TempHomes demanding that TempHomes stop utilizing Airbnb to advertise units at the Property. (*Id.* at 8.) Plaintiff asserts that its letters have been ignored. (*Id.* at 9.)

Airbnb is a short-term vacation rental company that permits owners or renters of a property to rent and/or sublease their property to others. (*Id.* at 3.) Airbnb's website provides listings between persons seeking to lease or sublease their property (hosts) and persons seeking to temporarily lease properties (guests). (*Id.*) According to its website, worldwide, Airbnb has over 3 million listings in 65,000 cities and it has provided accommodations to over 160 million guests. (*Id.*) Airbnb provides the following services to its hosts and guests: verification of its hosts' identities and guests' identities; a platform to securely collect and transfer payments; a $1,000,000 "Host Guarantee" for any damage to the proprieties; "Host Protection Insurance;" and "Guidebooks" which provide guests with the best areas to rent properties. (*Id.*)

2

**Exhibit A**

**5**

MDA admits that because Airbnb allows hosts to remain anonymous, connecting any Airbnb listing to a specific unit at the Property is difficult. (*Id.* at 9.) Airbnb listings do not contain tenants' names or addresses; therefore, MDA has not identified any of Airbnb's listings as listings of units at the Property. (*Id.*) Nonetheless, MDA asserts that on information and belief, hundreds of listings of units at the Property have been or are listed on Airbnb's website. On June 22, 2017, MDA sent Airbnb a letter explaining that tenants at the Property were prohibited from listing their units on websites such as Airbnb and requesting that Airbnb "cease and desist the listing of units at the Property." (*Id.* at 10, Ex. 5.) Plaintiff asserts that Airbnb ignored its letter and continues to actively promote, participate in, and receive compensation for the unlawful rental and/or subleasing of units at the Property. (*Id.* at 10.)

Plaintiff alleges despite informing TempHomes and Airbnb that Property tenants listing their units on Defendants' websites are in breach of their leases and demanding that the listings be terminated by TempHomes and removed by Airbnb, Defendants have not responded or removed the listings. (*Id.* at 1.)   MDA screens each of its prospective tenants by examining their criminal histories and credit histories. (*Id.* at 5.) However, Airbnb and TempHomes guests are not screened; consequently, MDA maintains security problems have arisen at the Property. (*Id.*) Further, MDA states that rentals from unscreened guests have resulted in noise complaints, vandalism, increased traffic, safety concerns, and the potential for increased criminal activity at the Property. (*Id.* at 5.)

As a result of Defendants' conduct, MDA alleges that it has needed to increase security at the Property to prevent unauthorized access by guests of Airbnb, TempHomes, and other short-term vacation rental companies. (*Id.* at 7.) Plaintiff claims it has also incurred significant costs repairing property damage caused by guests of Airbnb, TempHomes, and other short-term

**Exhibit A**

**6**

vacation rental companies; screening Airbnb's and TempHomes' websites for listings at the

Property; and evicting tenants who violated their leases by leasing their units through short-term

vacation rental companies. (*Id.*)  MDA further asserts that a substantial number of tenants have

opted not to renew their leases and units remain vacant as a result of the problems that have

arisen from tenants using short-term vacation rental companies.  (*Id.* at 7-8.)  In the Complaint,

MDA argues that TempHomes is subject to eviction as a result of its lease breaches and that

Airbnb has intentionally interfered with tenants' leases at the Property.  (*Id.* at 1-2.)

On July 21, 2017, MDA filed an eight-count complaint (the "Complaint") against Airbnb,

Airbnb Payments, and TempHomes.  MDA brings Count I against TempHomes for breach of

contract based on TempHomes breaches of its leases which prohibit tenants from subletting their

units and operating businesses out of their units for profit.  (*Id.* at 11-12.) Plaintiff brings Count

II against TempHomes, in the alternative to Count I, for unjust enrichment.  (*Id.* at 12.)  In Count

II, Plaintiff argues that by profiting from renting and/or subletting Property units in violation of

MDA's policies, TempHomes has unjustly retained a benefit to MDA's detriment.  (*Id.* at 12-

13.)  MDA brings Count III against TempHomes for forcible entry and detainer. (*Id.* at 13-14.)

Plaintiff brings Counts IV and V against Airbnb for tortious interference with contract and

tortious interference with prospective advantage.  (*Id.* at 14-17.)  In Count VI, MDA brings a

claim against Airbnb for unjust enrichment arguing that by profiting from brokering the rental of

units at the Property in violation of MDA's and Village Green's policies, Airbnb has unjustly

retained a benefit to MDA's detriment.  (*Id.* at 17-18.)  Plaintiff brings Count VII against all

Defendants for aiding and abetting trespass.  (*Id.* at 18-19.)  Finally, MDA brings Count VIII

against all Defendants for private nuisance.  (*Id.* at 21.)

**Exhibit A
7**

The matter is now before the Court on the Airbnb Defendants motion to dismiss.  In their
motion, the Airbnb Defendants argue that all claims against them should be dismissed under
Section 2-615. (MTD at 1-2.)  Defendants contend that Counts IV and V for tortious interference
with contract and tortious interference with prospective advantage fail because the Complaint
does not, and cannot, allege that Airbnb intentionally induced a breach of contract, that it
purposefully interfered with MDA's prospective tenant relationships, or that it engaged in any
wrongful conduct or impropriety which caused the alleged breach and/or interference.  (*Id.* at 1.)
Defendants also allege that Count VI for unjust enrichment fails because the Complaint does not
allege that Airbnb deprived anyone of a benefit or that Airbnb's conduct was unjust. (*Id.* at 1-2.)

The Airbnb Defendants further claim that Count VII for aiding and abetting trespass
should be dismissed because there has been no trespass alleged, the claim is barred by the
economic loss doctrine, and, even if there was a trespass, the Complaint does not allege that
Airbnb took any affirmative conduct to support a finding that it engaged in "aiding and abetting"
the trespass.  (*Id.* at 2.)  The Airbnb Defendants also assert that Count VII for private nuisance
requires dismissal because Plaintiff has made no claim against any person who supposedly
created a nuisance, there is no allegation of a "substantial" and "unreasonable" invasion of
privacy, and the claim is barred by the economic loss doctrine.  (*Id.*)  Finally, Defendants further
claim that all of Plaintiff's claims are barred the Communications Decency Act.  Plaintiff argues
Defendants' motion should be denied as it has sufficiently pled all claims against the Airbnb
Defendants and its claims are not barred by the economic loss doctrine or the Communications
Decency Act.  (Resp. MTD at 1-25.)

**Exhibit A
8**

## II.      Standard of Review

Section 2-615 of the Code allows a defendant to challenge the legal sufficiency of a complaint. *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 373 (Ill. 2009). A motion to dismiss under Section 2-615 does not raise affirmative defenses; rather, it only alleges defects on the face of the complaint. *Id.* The question presented by such a motion is whether the well-pleaded facts and all reasonable inferences that may be drawn therefrom, when taken as true and in a light most favorable to the plaintiff, sufficiently state a cause of action upon which relief can be granted. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006). Thus, a cause of action should not be dismissed on the pleadings unless it is clearly apparent that no set of facts can be proven that would entitle the plaintiff to recover. *Id.* However, Illinois is a fact-pleading jurisdiction. *Id.* While this does not require the plaintiff to set forth evidence in the complaint, it does demand that the plaintiff allege facts sufficient to bring a claim within a legally recognized cause of action. *Id.* A plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations. *Pooh-Bah Enters. v. Cty. of Cook*, 905 N.E.2d 781, 789 (Ill. 2009).

A Section 2-619 motion affords a "'means of obtaining . . . a summary disposition of issues of law or of easily proved issues of fact.'" *Smith v. Waukegan Park Dist.*, 896 N.E.2d 232, 238 (Ill. 2008) (*quoting Kedzie & 103rd Currency Exch. v. Hodge*, 619 N.E.2d 732, 735 (Ill. 1993)).[1] Under this section, a motion to dismiss admits the legal sufficiency of the complaint, but it raises any of nine enumerated defenses which act to defeat the action. *Neppl v. Murphy*, 736 N.E.2d 1174, 1178 (1st Dist. 2000); *Jones v. Lazerson*, 561 N.E.2d 151, 154 (5th Dist. 1990).

---

[1] Although Defendants' motion is labeled as a 2-615 motion to dismiss, some arguments are made under 2-619. Therefore, the Court will address both Section 2-615 and Section 2-619 in this opinion.

**Exhibit A**
**9**

In ruling on a Section 2-619 motion, the court must interpret "all pleadings and
supporting documents in the light most favorable to the nonmoving party." *Hubble v. Bi-State
Dev. Agency*, 938 N.E.2d 483, 488 (Ill. 2010); *Borowiec v. Gateway 2000, Inc.*, 808 N.E.2d 957,
962 (Ill. 2004). If the grounds for dismissal or the elements of the defense do not appear on the
face of the complaint, the party seeking dismissal must file an affidavit in support of the
motion. *Jordan v. Knafel*, 823 N.E.2d 1113, 1122 (1st Dist. 2005). If facts set forth in an
affidavit supporting a motion to dismiss are not contradicted by a counter-affidavit, they will be
taken as true "notwithstanding contrary unsupported allegations in the Petitioner's
pleadings." *Pryweller v. Cohen*, 668 N.E.2d 1144, 1149 (1st Dist. 1996).

## III.   Discussion

Defendants contend that the Court must dismiss Count IV for tortious interference with
contract because MDA has not alleged that a contract was breached at the time TempHomes
allegedly engaged in the wrongful conduct of listing units on Airbnb's website. (Mem. MTD at
6.) Even assuming a breach occurred, the Airbnb Defendants allege that MDA's claim fails for
MDA has not alleged Defendants intentionally induced anyone to breach their contracts with
MDA. (*Id.*) Defendants claim MDA has at most argued that Airbnb passively facilitated tenants
in breaching their leases by failing to remove listings from its website and soliciting prospective
hosts and guests through services offered to Airbnb customers. (*Id.* at 8.) MDA argues it
properly stated a claim for tortious interference with contract because its tenants breached their
leases and Airbnb actively induced those breaches by acting as a broker and by soliciting and
targeting prospective hosts and guests. (Resp. MTD at 12.)

To state a claim for tortious interference with contract, a plaintiff must plead the
following elements: 1) the existence of a valid and enforceable contract between the plaintiff and

**Exhibit A**
**10**

another; 2) the defendant's awareness of the contractual relationship between the plaintiff and another; 3) the defendant's intentional and unjustified inducement of a breach of contract; 4) breach of contract by the other caused by the defendant's wrongful acts; and 5) damage to the plaintiff. *Cress v. Recreation Servs., Inc.*, 795 N.E.2d 817, 842 (2d Dist. 2003). To establish inducement in the context of a tortious interference with contract claim, there must be active persuasion, encouragement, or incitement that goes beyond passively providing information. *In re Estate of Albergo*, 656 N.E.2d 97, 103-04 (2d Dist. 1995).

In the Complaint, MDA alleges that it has contractual relationships with tenants that have been breached by listings posted on Airbnb's website. However, MDA only identifies TempHomes' lease as a lease that was allegedly breached by listings on Airbnb's website: MDA has not named any other tenant who has purportedly breached his or her lease. In fact, MDA admits that it is difficult for it "to connect an Airbnb listing to a specific unit at the Property because Airbnb allows hosts to remain anonymous….it is nearly impossible for MDA to identify listings at the Property on Airbnb's website." (Compl. at 9.) Rather than identifying other tenants who have purportedly breached their leases and without providing any facts in support of its conclusion, MDA concludes that many tenants have not renewed their leases as a result of Airbnb's actions. Illinois is a fact-pleading jurisdiction. *Marshall*, 856 N.E.2d at 1053. A plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations. *Pooh-Bah Enters.*, 905 N.E.2d at 789. Since TempHomes' contract is the only contract MDA specifically identifies as having been breached, MDA has only sufficiently pled the first element of a tortious interference conference claim with respect to TempHomes.

To plead a tortious interference with contract claim, it is also necessary to claim that the defendant was aware of the contractual relationship between the plaintiff and the third party and

8

that the defendant induced the third party to breach its contract with the plaintiff.  MDA claims it has satisfied this element because on June 22, 2017, MDA sent a letter to Airbnb informing it that tenants at the Property were violating their leases by listing their units on Airbnb's website and requesting that Airbnb remove the listings from its website. (Resp. MTD at 10; Compl. at Ex. 5.)  Therefore, Airbnb could have only become aware of the prohibition in MDA's leases from listing units on Airbnb's website as of June 22, 2017.  MDA filed the instant action a month later on July 21, 2017.

In its Complaint, MDA does not state the dates upon which any tenant purportedly breached his or her lease.  However, in its June 22, 2017 letter to Airbnb, MDA alleged that MDA tenants, including TempHomes, had been violating their leases by listing their units on Airbnb's website.  (Compl. at  Ex. 5.)  Assuming MDA is correct that TempHomes was listing properties on Airbnb's website prior to June 22, 2017 when MDA informed Airbnb of the breaches, at that time, the Airbnb Defendants were not aware that MDA's leases prohibited tenants from listing their units on Airbnb's website.  By the time Airbnb was made aware MDA prohibited Property tenants from listing their units on Airbnb's website, TempHomes was already purportedly breaching its lease by using Airbnb's website.  Consequently, Airbnb could not have induced TempHomes to breach its lease.

MDA also attempts to allege tortious interference with contract claims against the Airbnb Defendants based on its claim that tenants, other than TempHomes, breached their leases by listing their units on Airbnb's website.  As discussed above, MDA has not attempted to identify any tenant other than TempHomes who allegedly breached his or her lease.  Without identifying the tenants, MDA cannot plead the other elements of a tortious interference with contract claim including whether Airbnb actually induced the tenants to breach the contracts and whether MDA

9

**Exhibit A**
**12**

suffered damages as a result of those breaches.  As MDA failed to sufficiently plead the elements of a tortious interference with contract claim against the Airbnb Defendants, the claim requires dismissal.

Defendants also claim that Count V for tortious interference with prospective advantage should be dismissed.  (Mem. MTD at 9-10.)  The Airbnb Defendants claim MDA has not alleged that it intended to interfere with MDA's prospective economic relationships or that its conduct was improper; consequently, its clam for tortious interference with prospective advantage fails. (*Id.* at 9-11.)  However, MDA claims it properly pled its claim for tortious interference with prospective advantage by alleging that by targeting MDA's tenants, Airbnb interfered with MDA's business relationships with its tenants.  (Resp. MTD at 14.)  MDA further argues that Airbnb's conduct was wrongful and improper for Airbnb continued to list MDA tenants' properties after being informed that the tenants' leases barred them from doing so. (*Id.* at 15.)

There are four elements of a tortious interference with prospective economic advantage claim.  *Fellhauer v. Geneva*, 568 N.E.2d 870, 878 (Ill. 1991).  A plaintiff must demonstrate "(1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Id.*

In the Complaint, MDA alleges that it has a contractual relationship with its tenants and enjoys a reasonable expectation of a continuing business relationship with those tenants in the form of lease renewals. (Compl. at 16.)  MDA claims that Airbnb interfered with MDA's business relationships by failing to remove listings at the Property which violated the terms of the leases MDA has with its tenants, continuing to permit hosts to list units at the Property for

**Exhibit A**

**13**

rent and/or sublease in violation of the leases, and soliciting prospective hosts of units at the Property. (*Id.* at 16-17.) MDA asserts that as a result of Airbnb's actions, a substantial number of Property tenants have not renewed their leases. (*Id.* at 17.) In making this claim, MDA has not attempted to identify any specific tenant that failed to renew a lease at the Property or any Airbnb listing that existed prior to, or after, Airbnb became aware that MDA's leases prohibited tenants from listing their units on Airbnb's website.

The first element of a tortious interference with business expectancy claim requires the plaintiff to specifically identify third parties who contemplated entering into business relationships with the plaintiff. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd, USA*, 893 N.E.2d 981, 993(1st Dist. 2008). "If a plaintiff were not required to specifically identify parties who actually contemplated entering into a business relationship with him, 'liability under a theory of tortious interference with prospective business expectancies would be virtually without limit and impossible to calculate.'" *Id.* (quoting *Intervisual Cmmc'ns, Inc. v. Volkert*, 975 F.Supp. 1092, 1103 (N.D. Ill. 1997)). In the Complaint, MDA does not attempt to identify with specificity any former tenant who declined to renew his or her lease with MDA. Rather, MDA broadly concludes that multiple tenants did not renew their leases because of Airbnb's actions: MDA provides no facts about the leases that were not renewed. Without identifying which leases MDA is claiming were not renewed as a result of Airbnb's actions, MDA cannot state a claim for tortious interference with prospective economic advantage.

The second element of a tortious interference with business expectancy claim is that the defendant had knowledge of the plaintiff's expectancy. Although MDA alleges that as of June 22, 2017 Airbnb was aware that MDA did not permit tenants to list their units on Airbnb's website and that MDA requested that Airbnb remove listings for the Property from its website,

**Exhibit A**
**14**

MDA does not allege that Defendants were aware that MDA intended to renew leases with
tenants in any of the impacted units.  Therefore, MDA has not pled the second element of a
tortious interference with prospective economic advantage claim.

A tortious interference with prospective economic advantage also requires the plaintiff to
allege more than just that the defendant interfered with a business expectancy: the plaintiff must
allege that Defendants "acted 'intentionally with the aim of injuring'" MDA's expectancy. *Id.* at
994 (*Romanek v. Connelly*, 753 N.E.2d 1062, 1073 (1st Dist. 2001)).  In the Complaint, although
MDA alleges that Airbnb intentionally left listings on its website and continued to solicit hosts
from the Property, MDA has not claimed that Airbnb did so with the intention of harming
MDA's expectancy of renewing its leases with its tenants.   To state a claim for tortious
interference with prospective economic advantage, the Plaintiff must allege that the defendant
intentionally acted with the purpose of injuring the plaintiff's expectancy: claiming that Plaintiff
acted purposefully is insufficient if the intentional acts were not intended at harming the
plaintiff's expectancy.  For the aforementioned reasons, MDA has failed to sufficiently plead a
claim for tortious interference with business expectancy.  Consequently, Count V must be
dismissed.

The Airbnb Defendants also contend that MDA's claim for unjust enrichment fails.
(Mem. MTD at 12-14.)  Defendants assert MDA's unjust enrichment claim fails because the
unjust enrichment claim is not an independent cause of action, MDA has not sufficiently alleged
wrongful conduct upon which its unjust enrichment claim is based, and the benefit Airbnb
purportedly derived resulted entirely from alleged contractual breaches by MDA's tenants.  (*Id.*)
MDA claims it adequately pled a claim for unjust enrichment because unjust enrichment can be
an independent cause of action, and it has alleged that Airbnb procured a benefit (compensation

**Exhibit A**
**15**

in the form of commissions) through wrongful interference with MDA's contractual relationships and economic expectancies. (Resp. MTD at 16-17.) MDA claims it has a better claim to the benefit than Airbnb and that Airbnb should not be permitted to benefit from something it retained by intentionally interfering with MDA's contractual relationships. (*Id.* at 17.) Finally, MDA argues that its claim for unjust enrichment does not derive entirely from contracts it had with tenants; rather, its claim is based on Airbnb's actions. *Id.*

Unjust enrichment is an equitable action which implies a quasi-contract to redress inequity. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). For a party "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672, 679 (Ill.1989). The Plaintiff must allege the defendant voluntarily accepted a benefit that would be inequitable for him to retain without payment. *Ramirez v. Smart Corp.*, 863 N.E.2d 800, 813-14 (3d Dist. 2007). There are five elements of an unjust enrichment claim: "'(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided at law.'" *Sherman v. Ryan*, 911 N.E.2d 378, 399 (1st Dist. 2009)(quoting *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.3d 377, 393 (Del. Ch. 1999)). Where the relationship of the parties is controlled by an express contract, a party cannot maintain an action for unjust enrichment. *Hartigan*, 607 N.E.2d at 177.

A claim for unjust enrichment "'is not a separate cause of action that, standing alone, would justify an action for recovery. Rather it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and

**Exhibit A**
**16**

may be redressed by a cause of action based upon that improper conduct.'" *Alliance Acceptance Co. v. Yale Ins. Agency*, 648 N.E. 971, 977 (1st Dist. 1995)(quoting *Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*, 484 N.E.2d 349, 354 (5th Dist. 1985)). "Where a plaintiff alleges that a benefit was transferred to the defendant by a third party, a claim for unjust enrichment is recognized in the following situations: (1) where the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead; (2) where the defendant procured the benefit from the third party through some type of wrongful conduct; or (3) where the plaintiff for some other reason had a better claim to the benefit than the defendant." *City of Chicago v. City of Kankakee*, 2017 IL App (1st) 153531, ¶36.

Defendants argue that Plaintiff's claim for unjust enrichment must be dismissed because unjust enrichment does not constitute an independent cause of action.  (Mem. MTD at 12-13.) While a claim for unjust enrichment must be based on some unlawful or wrongful conduct, as long as the claim is based on such conduct, a separate count for unjust enrichment can be pled in a complaint.  *See Alliance Acceptance*, 648 N.E. at 977; *City of Chicago*, 2017 IL App (1st) 153531, ¶36.  Therefore, the fact that MDA has pled its claim for unjust enrichment as a separate count does not provide a basis for dismissing the claim.

The Airbnb Defendants also argue that MDA's claim for unjust enrichment must be dismissed because MDA's claim does not meet the requirements under which a benefit granted to a defendant by a third party can be deemed unjust.  Neither party claims that circumstances exist in which a third party should have given a benefit to the plaintiff but mistakenly gave it to the defendants instead.  Therefore, MDA could only plead its claim for unjust enrichment based on compensation Defendants received from third parties if it alleges Defendants procured the

14

commissions through wrongful conduct or if MDA alleges it has a better claim to the benefit (the commissions) than the Airbnb Defendants.

In its response brief, without explanation, MDA contends that it has a better claim to the commissions than Airbnb. (Resp. MTD at 17.)  Although MDA claims it has a better claim to the commissions, MDA's position is perplexing as MDA claims that, under its leases, no one should be permitted to sublet the units without MDA's permission.  The leases also make no mention of MDA receiving a commission or additional rent if it grants a tenant permission to sublet his or her unit.  Therefore, presumably, if MDA permits a tenant to sublet his or her unit, MDA would not receive any additional compensation for the sublet.  MDA also has not alleged that tenants stopped paying rent when the units were purportedly sublet to Airbnb guests or that MDA is owed money from tenants for any reason as a result of the sublets.  Therefore, there is no basis for concluding that MDA has any claim to the commissions that Airbnb received, much less a better claim to the commissions.  For the first time in its response to Defendants' motion to dismiss, MDA claimed it has a better claim to the commissions than Airbnb: MDA did not make that claim in the Complaint.  Further, even if that conclusion was in the Complaint, it is only a conclusory statement.  Consequently, MDA has not stated a claim for unjust enrichment based on having a better claim to the commissions than the Airbnb Defendants.

In the Complaint and its response brief, MDA also argues that Airbnb improperly retained the commissions through intentional interference with MDA's contractual relationships and prospective economic expectancies.  (Compl. at 17-18; Resp. MTD at 16-17.)  Although this allegation does meet the requirement that MDA must plead that Defendants procured the commissions from third-parties through wrongful conduct, MDA's count for unjust enrichment still fails for it does not contain all of the elements of an unjust enrichment claim.  To make a

**Exhibit A**
**18**

claim for unjust enrichment, the plaintiff must also plead that the defendant retained a benefit to his or her detriment.  In the Complaint, MDA claims that Defendants retained a benefit (the commissions) to MDA's detriment because the defendants' conduct of soliciting and encouraging MDA tenants to list their units at the Property on Airbnb's website harms MDA. (Compl. at 18.)  Although MDA claims it has been harmed by the listings on Airbnb's website, MDA has not tied any alleged harm to Airbnb retaining commissions from the website.  In fact, the harm that MDA claims it has suffered would remain unchanged even if Airbnb had not received commissions.  Therefore, MDA has failed to sufficiently plead a claim for unjust enrichment.

The Airbnb Defendants also claim that MDA's claim for aiding and abetting trespass requires dismissal.  (Mem. MTD at 14-16.)  The Airbnb Defendants assert that MDA cannot state a claim for aiding and abetting trespass because it cannot state a claim for trespass and, even if it could state such a claim, MDA has not alleged sufficient facts in support of its allegation that MDA aided and abetted any trespass on the Property.  (*Id.*)  MDA argues it has sufficiently alleged a claim for aiding and abetting trespass because, as of June 22, 2017 at the latest, Airbnb was aware that Airbnb guests were not authorized to be in MDA units. (Resp. MTD at 18.)

A "'trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it.'" *Helping Others Maintain Envtl. Standards v. Bos*, 941 N.E.2d 347, 367 (2d Dist. 2010)(quoting *In re Chi. Flood Litig.*, 680 N.E.2d 265, 277 (Ill. 1997)).  Trespass can occur through intentional or negligent acts. *Id.*  "Illinois courts have defined a trespasser as 'one who enters the premises without permission, invitation, or other right, and intrudes for some purpose of his own, or at his convenience, or merely as an idler, including even those on the premises of

**Exhibit A
19**

another by sufferance without permission or an express or implied invitation." *Colls v. Chicago*,

571 N.E.2d 951, 988 (1st Dist. 1991.)  A claim for aiding and abetting a tort must contain the

following three elements: " (1) the party whom the defendant aids must perform a wrongful act

which causes an injury; (3) the defendant must be regularly aware of his role as part of the

overall tortious activity at the time that he provides the assistance; (3) the defendant must

knowingly and substantially assist the principle violation." *Thornwood, Inc. v. Jenner & Block*,

799 N.E.2d 756, 767 (1st Dist. 2003).

   Although MDA claims it has properly stated a claim for aiding and abetting trespass, in

the Complaint, MDA fails to identify with any specificity a person or persons who have

trespassed on the Property.  MDA broadly claims it is aware that TempHomes has been

advertising short-term listings of units at the Property and then admits it "is difficult for MDA to

connect an Airbnb listing to a specific unit at the Property because Airbnb allows hosts to remain

anonymous....it is nearly impossible for MDA to identify listings at the Property on Airbnb's

website." (Compl. at 9.) Further, nowhere in the Complaint does MDA identify a single Airbnb

guest who purportedly trespassed on the Property, or any dates upon which the alleged trespasses

occurred.

   Illinois is a fact-pleading jurisdiction. *Marshall*, 856 N.E.2d at 1053.  While this does

not require the plaintiff to set forth evidence in the complaint, it does demand that the plaintiff

allege facts sufficient to bring a claim within a legally recognized cause of action.  *Id.*  A plaintiff

may not rely on mere conclusions of law or fact unsupported by specific factual

allegations. *Pooh-Bah Enters.*, 905 N.E.2d at 789.  Since Plaintiff does not attempt to identify

any trespassers or any facts upon which it bases its trespass claims, it has failed to sufficiently

allege that any trespass occurred on the Property.

**Exhibit A
20**

The Court also notes that to allege trespass, the party claiming trespass must allege an invasion of the interest in the exclusive possession of land. *Helping Others Maintain Envtl. Standards*, 941 N.E.2d at 367. In this action, MDA claims its interest in the Property has been invaded; however, MDA does not allege that it has exclusive possession of the units at the Property; in fact, in claiming that the renters of the units are the ones improperly subletting the units to Airbnb guests in violation of their leases, MDA acknowledges that it does not have exclusive possession of the units. Rather, the individuals that MDA leases the units to possess the units. MDA contends that Illinois law does not require it to have exclusive possession of the land to bring a trespass claim based on two cases: *141 S. Main, Inc. v. Magic Fingers, Inc.* and *Am. Transp. Co. v. U.S. Sanitary Specialties Corp.*; however, neither case concerns civil trespass claims or establishes a basis for MDA to bring such claims.

In *141 S. Main, Inc. v. Magic Fingers, Inc.*, the court held that when someone's enjoyment of the premises is disturbed by another's tortious conduct and the landlord consequently incurs a loss in rent, the landlord may recover for the loss. 364 N.E.2d 605, 609 (4th Dist. 1977). The court in *Am. Transp. Co. v. U.S. Sanitary Specialties Corp.* reiterated the same holding. 118 N.E.2d 793, 797 (App.1954). However, neither case discussed trespass. Further, concluding that a landlord may recover for rent which he or she lost as a result of another's tortious conduct does not equate to concluding that the exclusive possession requirement of a trespass claim does not apply to landlords. MDA's claim for aiding and abetting trespass also fails because MDA has not alleged it had exclusive possession of any interest that was purportedly invaded by Airbnb guests.

To state a claim for aiding and abetting trespass, Plaintiff must also allege that the party whom the defendant aided did in fact trespass. *See Thornwood*, 799 N.E.2d at 767. Without

**Exhibit A**
**21**

identifying any purported trespasser, it is impossible for Plaintiff to allege that the Airbnb
Defendants assisted the alleged trespasser in his or her trespass upon the Property. Since MDA
has failed to sufficiently plead a claim for trespass and doing so is required to plead a claim for
aiding and abetting trespass, MDA has not sufficiently pled a claim for aiding and abetting
trespass against the Airbnb Defendants.

　　　　The Airbnb Defendants also argue that Plaintiff's claim for a private nuisance must be
dismissed. (Mem. MTD at 16-19.) Defendants claim that the count for private nuisance must be
dismissed because MDA has not alleged the elements of a private nuisance and the claim is
barred by the economic loss doctrine. (*Id.*) MDA counters that it has sufficiently alleged the
elements of a private nuisance claim by asserting that Airbnb solicited MDA's tenants to use its
platform resulting in Airbnb guests invading and intruding upon the Property. (Resp. MTD at
19.) Further, MDA states it has alleged there are numerous unidentified and unauthorized
persons without legal rights to the property interfering with MDA's interest in the use and
enjoyment of the property. (*Id.*)

　　　　A private nuisance concerns the invasion of the private use and enjoyment of land: it does
not require interference with possession. *In re Chi. Flood Litig.*, 680 N.E.2d at 277. A nuisance
is "'something that is offensive, physically, to the senses and by such offensiveness makes life
uncomfortable.'" *Id.* at 278 (quoting *Rosehill Cemetery Co. v. City of Chicago*, 185 N.E. 170,
177 (1933)). Typical examples of nuisances include: invasions by smoke, fumes, dust, vibration,
or noise produced by a defendant that invade the plaintiff's land. *Id.* To recover for a private
nuisance, a plaintiff must demonstrate two things: 1) there was a substantial invasion of the use
and enjoyment of his or her land, and 2) the invasion was either negligent or intentional and
unreasonable. *Malone v. Ware Oil Co.*, 534 N.E.2d 1003, 1003(4th Dist. 1989). Intentional

**Exhibit A
22**

means that the defendant acted for the purpose of causing the nuisance or knew the invasion

would result or was substantially certain to result from his or her conduct. *Id.* at 1006. The

standard for determining if conduct constitutes a nuisance "is the conduct's effect on a

reasonable person. *In re Chi. Flood Litig.*, 680 N.E.2d at 277. Further, "[l]iability for a

nuisance will not attach where the harm is caused by a superseding event." *Schiller v. Mitchell*,

828 N.E.2d 323, 330 (2d Dist. 2005); *see also Bloomington v. Westinghouse Elec.Corp.*, 891

F.2d 611, 614-15 (7th Cir. 1989).

      In Count VIII, Plaintiff brings a claim for private nuisance against all Defendants. It

bases its claim against the Airbnb Defendants upon its allegations that the Airbnb Defendants

solicited guests to use its website to stay in short-term rentals at the Property in violation of

tenants' leases. (Compl. at 20-21, Resp. MTD at 19.) MDA alleges that as a direct and

proximate result of Airbnb's conduct, the Airbnb Defendants have interfered with MDA's use

and enjoyment of the Property by impacting its ability to enforce its leases and control who is

present at the Property. (Compl. at 20.) Consequently, Plaintiff claims it has had to increase

security to screen for guests with unauthorized access to the Property, that the safety of the

residents at the Property has been compromised by unfamiliar and unscreened guests, and that it

has needed to repair damage caused by Airbnb's guests. (*Id.* at 21.)

      In this claim, Plaintiff makes broad, conclusory allegations against the Airbnb

Defendants; however, Plaintiff cites no facts in support of those allegations. Illinois is a fact-

pleading jurisdiction. *Marshall*, 856 N.E.2d at 1053. While this does not require the plaintiff to

set forth evidence in the complaint, it does demand that the plaintiff allege facts sufficient to

bring a claim within a legally recognized cause of action. *Id.* A plaintiff may not rely on mere

conclusions of law or fact unsupported by specific factual allegations. *Pooh-Bah Enters.*, 905

**Exhibit A
23**

N.E.2d at 789.  In its complaint, Plaintiff states that there are unfamiliar faces on the Property causing a nuisance; however, Plaintiff never cites any facts in support of its claim that any of those individuals have been Airbnb guests, nor does Plaintiff attempt to specifically identify any unauthorized guest.  Further, Plaintiff has not alleged any specific conduct by any particular guest that caused a nuisance at the Property.  MDA merely concludes that an increase in unauthorized guests has created a nuisance and impacted the use and enjoyment of the land.  MDA has also stated that it spent money on additional security and repairing damage to the Property.  Nowhere in the Complaint does MDA allege any specific security issues any guests have caused at the Property or any specific damage that was caused by tenants or non-tenants.  Therefore, MDA has failed to allege facts in support of its claim for private nuisance against the Airbnb Defendants.

Even if, *arguendo*, Plaintiff had alleged sufficient facts to demonstrate that guests that stayed at the Property as a result of Airbnb's listings created a nuisance, MDA's claim for private nuisance against the Airbnb Defendants would still fail.  In *Schiller v. Mitchell*, the court established that when making a private nuisance claim, the claimant must bring the claim against the person(s) actually performing the complained of acts unless it could be shown that the named Defendants retained control over the complained of actions.  828 N.E.2d at 330.  In *Schiller*, Defendants installed a camera to the side of their house which was pointed at the plaintiffs' garage, driveway, and the side of the plaintiffs' home.  *Id.*  In the complaint, Plaintiffs alleged that the defendants made hundreds of calls to the police complaining about activities in the subdivision, which were conducted primarily by the plaintiffs; consequently, the police investigated, questioned, and suspected the plaintiffs performed the complained of activities.  *Id.* at 326.  Plaintiffs claimed that the continuous calls and complaints to the police and other

**Exhibit A
24**

agencies, as well as the defendants' personal surveillance and videotaping of the plaintiffs,

resulted in a physical invasion of their residence, property, and lives. *Id.* at 329.   The plaintiffs

claimed they needed to response to the calls, investigation visits, and complaints that Defendants

made causing them to suffer extreme annoyance and discomfort. *Id.*  The plaintiffs stated that

these conditions prevented them from reasonably using their residence and yard; therefore,

Defendants' actions constituted a private nuisance.

The trial court ultimately dismissed Plaintiffs' claim for private nuisance.  The *Schiller*

court upheld the trial court's ruling finding that even if some of the alleged conduct constituted a

physical invasion that was either intentional or negligent and unreasonable, the claim failed since

the defendants did not make the complained of calls to the plaintiff, go onto the plaintiffs'

property, or serve them with process. *Id.* at 330.  Since the plaintiffs also did not allege that the

defendants controlled how the investigations into the plaintiffs were handled or the officials'

actions with respect to the plaintiffs, the claim against Defendants failed. *Id.*  In reaching this

decision, the court noted that the plaintiffs had not sued the people who actually performed the

acts that purportedly invaded their property. *Id.*

Similarly, in this action, presuming, *arguendo*, Plaintiff had sufficiently pled a physical

invasion of its property that was intentional or negligent and unreasonable, MDA did not sue the

individuals (the Airbnb guests) who were reasonable for the alleged nuisance.  Although in their

response brief MDA attempts to argue that Airbnb controlled its guests because they facilitated

and controlled their intrusion on the Property and provided them with a platform to invade

MDA's property, the Court does not find that advertising short-term rentals on a website equates

to Airbnb controlling what the Airbnb guests did on rented properties.  There are no allegations

that Airbnb controlled or attempted to control any guests' actions on rented properties.  Since

**Exhibit A
25**

Airbnb did not have control over the guests when they were at the Property, the guests' actions at the Property constitute an intervening cause. The Airbnb Defendants cannot be liable for the guests' actions at the Property; therefore, MDA's nuisance claim against the Airbnb Defendants fails.

The Airbnb Defendants also contend that even if, *arguendo*, MDA sufficiently alleged claims for private nuisance and aiding and abetting trespass, the claims would still fail for they would be barred by the economic loss doctrine. (Mem. MTD at 18.) As discussed *supra*, the Court finds that MDA has failed to sufficiently plead claims for private nuisance and aiding and abetting trespass. Therefore, the Court is not required to address Defendants argument that the economic loss doctrine would bar MDA's claims for private nuisance and aiding and abetting trespass. However, the Court notes that the economic loss doctrine would not bar MDA's claims for private nuisance or aiding and abetting trespass.

The economic loss doctrine was established in 1982 by the Illinois Supreme Court in *Moorman Mfg. Co. v. Nat'l Tank Co. Hecktman v. Pac. Indem. Co.*, 59 N.E.3d 868, 870 (1st Dist. 2016). Under the doctrine, a "'plaintiff cannot recover for solely economic loss' under a tort theory of negligence....'economic loss' is defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits- without any claim of personal injury or damage to other property.'" *Id.* at 872 (quoting *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.3d 443, 450-51 (Ill. 1982)). The doctrine exists to enforce the distinction between tort law, which provides a remedy for losses from personal injuries and property damage, and contract law and the Uniform Commercial Code (UCC), which provide remedies from economic losses that result from diminished commercial expectations without personal injury and property damage. *Id.* at 872-73. There are three exceptions to the economic loss

**Exhibit A**
**26**

doctrine: "(1) where the plaintiff sustained damage, *i.e.*, personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional false representation (*i.e.* fraud); and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *Id.* 873.

Generally, the economic loss doctrine is applied to commercial transactions, defective goods, or other situations under which contract law or the UCC general provide remedies. *Metro Water Reclamations Dist. of Greater Chicago v. Terra Found for Am. Art*, 13 N.E.3d 44, 59-60 (1st Dist. 2014). In *Metro Water Reclamation*, when addressing whether the economic loss doctrine can be applied to damages sustained as a result of intentional torts, the court did not create an overarching rule regarding whether the doctrine could be applied to such situations. However, the court ruled that the economic loss doctrine is inapplicable to a claim based upon intentional interference with an easement. *Id.* at 59. The court reasoned that a claim for intentional interference seeks to protect people with an interest in the possession of real property against having their rights to access and use of the property unreasonably interfered with by others. *Id.* at 41. Under such circumstances, the parties to the easement could not have "allocated their risks as in contract or where the Uniform Commercial Code applies." *Id.* at 42. Therefore, the Court concluded that the right holders under the easement were entitled to recover damages, including damages for economic loss, that were proximately caused by interferences with their rights. *Id.* at 44.

In reaching its determination that the economic loss doctrine did not bar easement right holders from collecting economic damages cause by intentional interference with their easement,

**Exhibit A**
**27**

the *Metro Water Reclamation* court distinguished the claims in that case from the private

nuisance claim that was addressed in *In re Chicago Flood Litigation*. In *In re Chicago Flood*

*Litigation* the court ruled that a plaintiff in a private nuisance action could recover for all

consequential damages resulting from the use and enjoyment of his or her person or property;

however, damages solely for economic loss were not permitted. *Id.* at 43. The court in *Metro*

*Water Reclamation* highlighted that the court in *In re Chicago Flood Litigation* did not

distinguish between intentional or negligent nuisance claims but rather, used the economic loss

doctrine to avoid open-ended economic consequences from one negligent act such as a sudden

flood. *Id.* The *Metro Water Reclamation* court distinguished the tort of intentional interference

with an easement from the private nuisance claims considered in *In re Chicago Flood Litigation*

stating that the interference in the case before them was different than the one in *In re Chicago*

*Flood Litigation* as it was ongoing, continuous, and intentional. (*Id.* at 44.)

Similarly to *Metro Water Reclamation*, MDA bases its claims against the Airbnb

Defendants for private nuisance and aiding and abetting trespass on continuous and intentional

conduct. MDA bases both claims on its allegations that Airbnb provides guests with a platform

to trespass on the Property and has continued to permit, solicit, and encourage tenants at the

Property to list their units on Airbnb's website. (Compl. at 18-20.) MDA claims that its rights

and tenants' use and enjoyment of the Property has been diminished by the aforementioned

conduct. Although as explained *supra* MDA's claims for private nuisance and aiding and

abetting trespass are insufficient, presuming *arguendo*, they were sufficiently pled, MDA would

not be barred from recovering economic damages related to the claims under the economic loss

rule. The economic loss doctrine would not provide a basis to bar recovery for MDA complains

of a continuous and intentional invasion of its property rights. Neither the UCC nor a contract

**Exhibit A
28**

could have protected MDA's rights to the enjoyment and use of the Property in a way that would have prevented the complained of conduct.

Finally, the Airbnb Defendants argue that all of MDA's claims against them are preempted by the Communications Decency Act ("CDA"). (Mem. MTD at 19-22.) MDA claims that Airbnb cannot be shielded from liability under the CDA and the Airbnb Defendant's interpretation of the CDA is overly road and has been rejected by Illinois courts, as well as courts in other jurisdictions. (Resp. MTD at 22.)

Under the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. §230(c)(1). Section 230 of the CDA also provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. §230(e)(3). When interpreting federal statute, the Court must look to federal court decisions to ensure that a uniform statutory scheme is followed. *Lansing v. Sw. Airlines Co.*, 980 N.E.2d 630, 635 (1st Dist. 2012). If federal cases conflict or are inconsistent, state courts must follow the decision that is more reasonable and consistent with the statutory purpose and Supreme Court precedent. *Id.* at 636.

A three-part test is utilized to determine whether the CDA can shield a party from liability. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009). For a party to be shielded from liability, the party must be "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action as a publisher or speaker (3) of information provided by another information content provider." *Id.* Defendants argue that under this test, Airbnb cannot be held liable for any of the claims alleged in MDA's

26

**Exhibit A**
**29**

complaint. (Mem. MTD at 19-22.) However, MDA argues that Defendants' interpretation of the
CDA is overly broad. (Resp. MTD at 25.)

For a party to be shielded from liability under the CDA, the party must be a provider or
user of an interactive computer service. *Barnes*, 570 F.3d at 1100-01. However, immunity can
only be applied if the interactive computer service provider is also not an information content
provider. *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157,
1162 (9th Circ. 2008)(*en banc*). An interactive computer service "means any information
service, system, or access software provider that provides or enables computer access by
multiple users to a computer server, including specifically a service or system that provides
access to the Internet and such systems operated or services offered by libraries or educational
institutions." 47 U.S.C. §230(f)(2). MDA does not dispute that Airbnb's website qualifies as an
interactive computer service under the CDA. Airbnb's website qualifies as an information
system or service that provides multiple users with a specific computer service (a platform for
listing and renting properties).

The parties do dispute whether Airbnb is also an information content provider: if Airbnb
is also an information content provider, it cannot enjoy immunity under the CDA. *Fair Housing
Council*, 521 F.3d at 1162. An information content provider is defined as "any person or entity
that is responsible, in whole or in part, for the creation or development of information provided
through the Internet or any other interactive computer service." 47 U.S.C. §230(f)(3). It is
possible for a website to be immune from liability for certain content it displays to the public,
while being subject to liability for other content it displays. *Fair Housing Council*, 521 F.3d at
1162-63. A website operator is only a service provider with respect to content "[i]f it passively
displays content that is created entirely by third parties." *Id.* at 1162. However, with respect to

**Exhibit A
30**

content that the website operator creates itself or is responsible in whole or in part for creating or developing, the website is considered a content provider, as well as a service provider. *Id.* In the context of the CDA, developing has been defined as "referring not merely to augmenting the content generally, but to materially contributing to its alleged unlawfulness. In other words, a website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct." *Id.* at 1167-68. When the critical information was provided by a third-party and is transmitted to others on a website without significant alteration, the website operator is not the developer of the information. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-24 (9th Cir. 2003). If a website provides neutral tools for users to conduct searches that might qualify as unlawful searches, the operator's actions do not equate to development. *Fair Housing Council,* 521 F.3d at 1169.

In this action, MDA alleges the Airbnb Defendants can be held liable because the complained of listings are unlawful since they advertise rentals that violate the terms of MDA's leases, Defendants have failed to remove such listings, and Airbnb has utilized its platform to actively encourage tenants to violate their leases. (Compl. at 14-21.) MDA has not alleged Airbnb created any of the content in the listings, that it modified any listings, or that Airbnb has taken any actions which specifically targeted MDA tenants. Rather, MDA claims the Airbnb Defendants behaved improperly by failing to remove listings after being informed that the listings violated MDA's leases with its tenants. These allegations do not indicate that the Airbnb Defendants took any actions which materially contributed to creating the content in the listings. Third-parties (the hosts) are responsible for creating the content in the listings: the website merely provides a platform to advertise the listings. The fact that Airbnb failed to remove listings at MDA's request does not transform Airbnb into an information content provider:

**Exhibit A
31**

failure to remove content does not contribute to the development of the content in the listings. The critical information in the listings was ultimately created by third parties using Airbnb's website to list properties.

MDA attempts to expand the Airbnb Defendants' role in transmitting content created by third-party users based on other services and guarantees that Airbnb provides. These services include "verification of the identifies of hosts and guests, a secure platform to collect and transfer payments, a $1,000,000 'Host Guarantee' for damage to the property, 'Host Protection Insurance,' 'Guidebooks' which provide prospective guests with the 'best' places to rent, etc." (Compl. at 3.) None of these services involve the Airbnb Defendants actually developing any of the information in the listings. Even where website hosts have taken a more active role in making content on a website by creating a rating system for users based on feedback received by other users, courts have not found the host's actions expansive enough to determine that the website host was an information content provider. *See Kimzey v. Yelp! Inc.*, 836 F.3d 1262, 1270 (9th Cir. 2016). As there are no allegations that the Airbnb Defendants actually contributed to content in the listings that purportedly violate MDA's leases, the Airbnb Defendants are not information content providers under the CDA with respect to the listings on its website. Under the CDA, Airbnb is only an interactive computer service with respect to the listings.

For a defendant to be shielded from liability under the CDA, the plaintiff must also seek to treat the defendant as a publisher or speaker in a state law cause of action. *Barnes,* 570 F.3d at 1100-01. Publication involves "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id.* at 1102. The parties dispute whether this element of the test for CDA immunity has been satisfied. The Airbnb Defendants contend that MDA is treating it as the publisher or speaker of Airbnb listings that were created and listed by

**Exhibit A
32**

Airbnb users/hosts on Airbnb's website. (Mem. MTD at 20-22). However, MDA claims it is

basing its claims on Airbnb's own misconduct of "intentionally encouraging, facilitating, and

profiting from breaches of MDA's leases, and knowingly interfering with MDA's contractual

relationships." (Resp. MTD at 25.) MDA further attempts to tie its claims to Airbnb's alleged

misconduct by referencing *Airbnb, Inc. v. City & Cty. of San Francisco*. Although MDA tries to

analogize *Airbnb, Inc. v. City & Cty. of San Francisco* to this action, the two actions are

distinguishable.

   *Airbnb, Inc. v. City & Cty. of San Francisco* addressed whether Airbnb had violated a

municipal ordinance which made it a misdemeanor to collect a fee for providing booking

services for renting an unregistered unit. 217 F.Supp.3d 1066, 1071 (N.D. Cal. 2016). The court

explicitly recognized that the challenged ordinance "cares not a whit about what is or is not

featured on their websites." *Id.* at 1074. The court ultimately found that the CDA could not

provide a basis for immunity because the claims in the case were based on Airbnb's purported

misconduct of providing booking services in violation of the municipal ordinance. In this action,

although MDA attempts to tie its claims to Airbnb's conduct by referencing the fact that Airbnb

charges for its services, the claims are not ultimately predicated on the fact that Airbnb profits

from its website. While it is true that Airbnb does earn commissions from users utilizing its

website, the fact that it earns commissions is not the basis of MDA's claims.

   MDA's claims are based on the fact that Airbnb has not removed listings of units at the

Property and that Airbnb is allegedly still soliciting tenants at the Property to use its website to

list their units. Other jurisdictions have found that processing payments and transactions in

connection with listings created by third-parties does not strip providers or users of an interactive

computer service of immunity under the CDA. *See Hill v. StubHub, Inc.*, 727 S.E.2d 550, 562-

**Exhibit A
33**

63 (N.C. Ct. App. 2012)(finding that in a case concerning whether StubHub was responsible for tickets sold unlawfully in excess of their face value where StubHub earned commissions when sales occurred, StubHub's payment processing responsibilities were irrelevant to determining whether it was entitled to immunity under the CDA because the ticket seller controlled the content at issue (the ticket price)).

In *La Park La Brea A LLC v. Airbnb, Inc.*, the plaintiff advanced extremely similar claims against Airbnb to the ones brought in this case based on listings on Airbnb's website that violated one of the plaintiff's leases. 2017 U.S. Dist. LEXIS 213721, at *2-5 (C.D. Cal. Dec. 29, 2017).   In that case, the court found the fact that Airbnb received commissions when units were rented from its website did not mean the plaintiff's claims were based on Airbnb's misconduct. *Id.* at *18-20.  The court also found the complaint was improperly treating Airbnb as the publisher or speaker of information that was provided by third-party users utilizing Airbnb's website to rent their units.  *Id.*  The Court finds the reasoning in the aforementioned cases persuasive.  In this action, MDA is ultimately taking issue with the content that Airbnb publishes in listings that were created by third-party users and which Airbnb played no active role in creating.  It is the content of the listings that MDA claims violates its leases.  Therefore, in the Complaint, MDA is treating Airbnb as the publisher of the information in the listings and the second prong of the test for immunity under the CDA is satisfied.

Finally, for a party to be shielded from liability under the CDA, the party must be being treated as the publisher/speaker of information that was provided by another information content provider. *Barnes,* 570 F.3d at 1100-01. As discussed above, an information content provider is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer

**Exhibit A**
**34**

service." 47 U.S.C. §230(f)(3).  Here, the hosts/users who list their units on Airbnb's website are responsible for creating and developing the content in the Airbnb listings.  Since it is the information that the hosts/users create for their listings that MDA is attempting to hold the Airbnb Defendants liable for in this action, the third element of the test for CDA immunity is fulfilled.

As all three elements of the test for CDA immunity have been met, MDA is preempted by the CDA from bringing its claims against the Airbnb Defendants.   There are not circumstances under which MDA could replead its claims against the Airbnb Defendants to avoid preemption.  Consequently, MDA's claims against the Airbnb Defendants are dismissed with prejudice.

**Exhibit A**
**35**

IT IS, THEREFORE, HEREBY ORDERED:

1) The Airbnb Defendants' Motion to Dismiss is GRANTED.  Counts IV, V, and VI are dismissed with prejudice.  Counts VII and VIII are dismissed with prejudice with respect to the Airbnb Defendants.

2) This matter is set for status on ___*March 14, 2018 at 1000AM*___

ENTERED:

ENTERED
JUDGE MOSHE JACOBIUS - 1556

FEB 1 4 2018

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge Moshe Jacobius        No. 1556

33

**Exhibit A
36**