O

# United States District Court
# Central District of California

| | |
|---|---|
| HOMEAWAY.COM, INC. | Case Nos. 2:16-cv-06641-ODW (AFM) |
| Plaintiff, | 2:16-cv-06645-ODW (AFM) |
| v. | |
| CITY OF SANTA MONICA, | |
| Defendant. | |
| AIRBNB, INC., | **ORDER DENYING PLAINTIFFS'** |
| Plaintiff, | **MOTION FOR PRELIMINARY** |
| v. | **INJUNCTION [57]; GRANTING** |
| CITY OF SANTA MONICA | **MOTION TO FILE AMICUS** |
| Defendant. | **BRIEF [68]** |

## I.       INTRODUCTION

Plaintiffs Airbnb, Inc. and Homeaway.com, Inc. (collectively "Plaintiffs") challenge the City of Santa Monica's (the "City") Ordinance Number 2535 prohibiting short-term housing rentals (the "Ordinance"). Plaintiffs move the Court to preliminarily enjoin the City from enforcing the Ordinance, arguing that the Ordinance violates (1) the California Coastal Act, (2) the federal Communications Decency Act, 47 U.S.C. § 230 ("CDA"), and (3) the First Amendment of the U.S.

Constitution.  (Mot., ECF No. 57.)  For the following reasons, the Court **DENIES** Plaintiffs' Motion.  (ECF No. 57.)

## II.    BACKGROUND

### A.    FACTUAL BACKGROUND

Plaintiffs operate websites that allow individuals seeking, and persons listing, accommodations ("*guests*" and "*hosts*," respectively) to find each other and enter into agreements to reserve and book accommodations  (Decl. of David Owen ("Owen Decl.") ¶ 2, ECF No. 59; Decl. of Bill Furlong ("Furlong Decl.") ¶ 3, ECF No. 60.) Hosts provide the content of their listings, such as description, price, and availability. (Owen Decl. ¶¶ 7–8; Furlong Decl. ¶ 12.)

Airbnb and HomeAway operate with different business models.  Airbnb provides payment processing services that permit hosts to receive payments electronically.  (Owen Decl. ¶ 3.)  Airbnb receives a fee from the guest and host, which is a percentage of the booking fee. (*Id.* ¶ 4.)  HomeAway hosts pay for services in one of two ways: a pay-per-booking option based on a percentage of the amount charged by the host, or buying a subscription to advertise properties for a set period. (Furlong Decl. ¶ 6.)   HomeAway users may arrange for rentals through online booking and online payment services using a third-party payment processor.  (*Id.* ¶ 9.)

In May 2015, the City adopted Ordinance 2484CCS (the "Original Ordinance"), adding Chapter 6.20 to the Municipal Code.  The Original Ordinance prohibited "Vacation Rentals," which were defined as rentals of residential property for thirty consecutive days or less, where residents do not remain within their units to host guests.  Santa Monica Municipal Code ("SMMC") §§ 6.20.010(a); 6.20.020(a).  The Original Ordinance permitted residents to host visitors for compensation for a period of less than thirty-one days, so long as residents obtained a business license and remained on-site throughout the visitor's stay.  SMMC § 6.20.010(a).  The City claims that the Original Ordinance expressly adopted and reaffirmed the City's longstanding

prohibition on short-term rentals.[1]  (Opp'n 5.)  Plaintiffs argue that that the Original Ordinance marked an abrupt change in the law, because before it was passed, the City never directly banned short-term rentals.  (Reply 2, ECF No. 70.)

The Original Ordinance also regulated "Housing Platforms" like Plaintiffs, by barring them from "advertis[ing]" or "facilitat[ing]" rentals that violated the City's short-term rental laws.  It also required them to (1) collect and remit to the City applicable Transient Occupancy Tax revenue and (2) disclose certain information about listings to the City.  SMMC §§ 6.20.030, 6.20.050.  After the Original Ordinance passed, the City issued Plaintiffs several citations, which Plaintiffs paid under protest.  (Owens Decl. Exs. G–M; Furlong Decl. ¶ 14 & Ex. D.)

When the City increased its enforcement efforts, Plaintiffs filed the instant case on September 2, 2016.  (Compl., ECF No. 1.)  On September 21, 2016, the parties stipulated to stay the case to allow the City to prepare and consider amendments to the Original Ordinance to address the legal challenges Plaintiffs raised.  (ECF No. 20.)

On January 24, 2017, the City adopted the Ordinance, which amended the Original Ordinance to mirror aspects of a San Francisco ordinance, which was upheld by a district court in similar litigation brought by Plaintiffs in the Northern District of California.  (Opp'n 6.)  The Ordinance does not prohibit the publication, or require the removal of, content provided to Plaintiffs by hosts, nor does it require Plaintiffs to verify content provided by hosts to ensure that short-term rental hosts comply with the law.  (*Id.*)  Rather, the Ordinance states that "[h]osting platforms shall not complete any booking transaction for any residential property or unit unless it is listed on the City's registry [of licensed home-sharing hosts] at the time the hosting platform receives a fee for the booking transaction."  SMMC § 6.20.050(c).  The Ordinance

---

[1]  According to the City, the City's Zoning Ordinance identifies the uses that are specifically permitted in each district.  (Opp'n 4.)  Under this permissive zoning scheme, if a use is not listed, it is prohibited.  (*Id.*)  The City claims that the legislative record shows that vacation rentals, such as hotels, motels, and B&Bs, have not been a permitted use in any residential zoning district since at least 1988.  (*Id.*)

also includes a "Safe Harbor" provision stating that any online hosting platform that operates in compliance with hosting platform responsibilities as set out in the Ordinance will be presumed to be in compliance with the law. *Id.* § 6.20.050(e). Each violation is an infraction, punishable by a fine of up to $250, or a misdemeanor, punishable by a fine up to $500 imprisonment of up to six months, or both. *Id.* § 6.20.100(a).   The Ordinance includes a provision that the duties on hosting platforms "will not apply if determined by the City to be in violation of, or preempted by" state or federal laws. *Id.* § 6.20.050(f).

Because Plaintiffs facilitate "booking transactions" on their websites to facilitate short-term housing rentals, their conduct is covered by the Ordinance.  As Plaintiffs point out, the Ordinance does not apply to websites like Craigslist, "which do not charge for booking services, and act solely as publishers of advertisements for short term rentals."  (Decl. of Jonathan H. Blavin ("Blavin Decl."), Ex. E at 46, ECF No. 58.)

Plaintiffs continue to facilitate short-term rentals in Santa Monica.  There are 194 licensed hosts in the City, 90% of whom advertise on Plaintiffs' platforms.  (Decl. of Denise Smith ("Smith Decl.") ¶ 6, ECF No. 66.)  The City estimates that during peak tourist months there are approximately 950 unlawful short-term rental listings for locations within the City on Plaintiffs' sites.  (*Id.* ¶ 8.)  The City argues that the short-term rental market reduces affordable housing supply by converting residential apartments to tourist use for the financial benefit of the unit owner.  (Opp'n 4.)  Additionally, the City argues that vacation rentals can threaten the character of a neighborhood, because the units are not occupied by permanent residents.  (*Id.*)  The purpose of the Ordinance, the City claims, is to keep housing prices down, to ensure the availability of affordable rental options for its residents, and to preserve the character of its communities.  (Opp'n 4, 7.)

**B.   PROCEDURAL BACKGROUND**

On December 13, 2017, Plaintiffs filed a First Amended Complaint, alleging that the Ordinance violates the CDA, the First, Fourth, and Fourteenth Amendments of the U.S. Constitution, the Stored Communications Act, 18 U.S.C.§ 2701 *et seq.*, and the California Coastal Act, Cal. Pub. Res. Code § 30500 *et seq.* (First Am. Compl. ("FAC"), ECF No. 55.)  On the same day, Plaintiffs filed the instant motion for preliminary injunction, which is based solely on its alleged violations of the California Coastal Act, the CDA, and the First Amendment.  The City opposes the motion.  (Opp'n, ECF No. 63.)  Additionally, the City of Los Angeles has requested to submit an amicus brief supporting the City's opposition, which the Court **GRANTS**. (ECF No. 68.)

## III.   LEGAL STANDARD

A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A plaintiff seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.  *Id.* at 20; *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979 (9th Cir. 2011).  In each case, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987).  Further, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

## IV.   ANALYSIS

Plaintiffs argue that the Court should enjoin enforcement of the Ordinance because the Ordinance violates the California Coastal Act, the CDA, and the First Amendment.  The Court addresses each argument in turn.

**A.    CALIFORNIA COASTAL ACT**

      *1.    Structure of the Act*

      The California Coastal Act regulates all development in a zone extending inland 1,000 yards from the coast, including portions of the City.  The Coastal Act provides that "[l]ower cost visitor and recreational facilities shall be protected, encouraged, and where feasible, provided."  Cal. Pub. Res. Code § 30213.  The Coastal Act does not displace a local government's ability to regulate land use, but it expressly preempts conflicting local regulations.  *Id.* § 30005(a); *see Yost v. Thomas*, 36 Cal. 3d 561, 573 (1984) (explaining that local government restrictions must "not conflict with the act").

      The Coastal Act requires local governments in the coastal zone to prepare a Local Coastal Program ("LCP").  Cal. Pub. Res. Code § 30500.  An LCP includes a Land Use Plan ("LUP"), which must "indicate the kinds, location, and intensity of land uses, the applicable resource protection and development policies and, where necessary, a listing of implementing actions."  *Id.* § 30108.5.  LCPs and any amendments thereto are effective only if and when the Coastal Commission certifies them.  *Id.* § 30214(a), (b), (e).  The Coastal Commission (the "Commission") administers the Coastal Act and must review and certify LCPs prepared by coastal municipalities and any amendments thereto.  *Id.* §§ 20513, 30512(b), (c).  If a municipality does not have a certified LCP, if it wants to engage in "development" in the coastal zone it must apply to the Commission for a Coastal Development Permit.  *Id.* § 30600(a).  "Development" includes any "change[s] in the density or intensity of use of land."  *Id.* § 30106.  Plaintiffs argue that the City was required to obtain approval from the Commission before enforcing the Ordinance, which the City did not do, because the Ordinance (1) is effectively an amendment to the City's LUP and (2) constitutes a "development" under the Coastal Act.

      *2.    Procedural Requirements*

      Plaintiffs contend that they are likely to prevail on their claim that the Ordinance is preempted by the Coastal Act, both because it restrains coastal access

1    and because the City ignored the Commission's processes and directives in enacting
2    it.  The City has an LUP, which the Commission certified in 1992.  (Blavin Decl., Ex.
3    K at 174.)  The City does not have an LCP, nor has it ever attempted to modify the
4    LUP.  (Opp'n 21–22.)  Plaintiffs argue that the Ordinance's ban on vacation rentals
5    effectively amends the City's LUP and requires the Commission's approval.  The
6    City's failure to seek the Commission's approval of the Ordinance, Plaintiffs contend,
7    makes it procedurally invalid under the Coastal Act.

8         Plaintiffs argue that the City's LUP did not limit short-term vacation rentals,
9    and because the Ordinance now does, it is effectively an amendment to the LUP.
10   (Mot. 10.)  Plaintiffs further contend that the Ordinance's ban on vacation rentals
11   conflicts with the following statement in the City's LUP: "Lower cost visitor and
12   recreational facilities shall be protected, encouraged, and where feasible, provided."
13   (Mot. 10 (citing Blavin Decl., Ex. J at 160).)  This language was taken directly from
14   the text of the Coastal Act.  The Court is not convinced that the Ordinance amends the
15   LUP, because as the LUP is written, it neither promotes nor expressly permits
16   vacation rentals.    Rather, the LUP does not mention vacation rentals at all.
17   Additionally, the City argues that at the time the LUP was written, short-term rentals
18   were banned throughout the City, and the ban continued up until the time of the
19   Original Ordinance.  (Opp'n 22.)  According to the City, the Ordinance actually
20   relaxed the standards by allowing certain types of short-term rentals.  (*Id.*)  Plaintiffs
21   disagree and argue that because there was never a "direct ban" on vacation rentals, the
22   Ordinance qualifies as an abrupt change in the law.  The Court finds this to be a close
23   issue that would benefit from further evidence and briefing.  Neither party presents
24   evidence regarding the history of the City's enforcement (or lack thereof) in relation
25   to the so-called longstanding ban on vacation rentals.  For these reasons, the Court
26   finds it to be inappropriate to decide at this stage whether the Ordinance constitutes an
27   amendment to the LUP.  Plaintiffs have not demonstrated a likelihood of success on
28   this issue.

1    Even if the Ordinance was not an amendment of the LUP, the City would also
2    have had to seek Commission approval if the Ordinance amounted to "development"
3    as defined by the Coastal Act.  The City argues that it was not required to seek the
4    Commission's approval of the Ordinance because the Ordinance is not a
5    "development."  This argument is persuasive.  Plaintiffs have not convinced the Court
6    that it should adopt a broad interpretation of "development," which would include
7    every possible change in the law that might result in a change to land use.  Further,
8    Plaintiffs cite to no case or statute that interprets "development" to include city-wide
9    land-use regulations.  To overcome the common sense definition and understanding of
10   the term "development," Plaintiffs must do more.  Therefore, the Court finds that
11   Plaintiffs have not met their burden to demonstrate a likelihood of success on this
12   issue.

13          *3.     Alleged Substantive Invalidity*

14          Plaintiffs argue the Ordinance is also substantively invalid under the Act
15   because the Commission has consistently rejected laws banning vacation rentals in the
16   coastal zone.  According to Plaintiffs, the Commission's position on the prohibition of
17   vacation rentals is clear, because in one letter from the Commission to all coastal
18   planning and community development directors, including the City, the Commission
19   stated, "vacation rental prohibitions unduly limit public recreational access
20   opportunities inconsistent with the Coastal Act." (Mot. 7.)  The Commission has also
21   advised coastal communities that "vacation rental regulation in the coastal zone must
22   occur within the context of your [LCP] and/or be authorized pursuant to a coastal
23   development permit (CDP)." (Mot. 7–8.)  Both an LCP and a CDP are subject to
24   Commission approval.

25          Plaintiffs' arguments on these points are not persuasive.  The Commission's
26   comments regarding its interpretation of the Coastal Act are not binding on the Court.
27   If the City was not obligated to get the Commission's approval of the Ordinance, then

28

1  the Court need not consider the Commission's opinions on vacation rental
2  prohibitions.

3         *4.*     *Whether the Coastal Act Preempts the City's Police Powers*

4        The Coastal Act does not preempt the police powers of California
5  municipalities absent clear conflict with the act.  Cal. Pub. Res. Code. § 30005(a), (b),
6  *see also* Cal. Const., art. XI § 7 (municipalities may make and enforce "all local,
7  police, sanitary, and other ordinances and regulations not in conflict with general
8  laws").  Because the Court finds that Plaintiffs have not met their burden to establish
9  that the Ordinance constitutes either an amendment to the LUP or "development"
10 under the Coastal Act, Plaintiffs have likewise not demonstrated that the Ordinance
11 clearly conflicts with the Coastal Act.

12       For the foregoing reasons, the Court finds that Plaintiffs have not met their
13 burden to show a likelihood of success in showing that the Ordinance violates the
14 California Coastal Act.

15 **B.**    **COMMUNICATIONS DECENCY ACT**

16       Plaintiffs argue that the Ordinance violates the CDA because that statute forbids
17 imposing liability on websites based on content supplied by third parties.  (Mot. 12.)
18 Under the CDA, "no provider or user of an interactive computer service shall be
19 treated as the publisher or speaker of any information provided by another information
20 content provider."  47 U.S.C. § 230(c)(1).  Plaintiffs argue that this language creates
21 "broad 'federal immunity to any cause of action that would make service providers
22 liable for information originating with a third-party user of the service.'"  (Mot. 12
23 (citing *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007)).)
24 Governments and private plaintiffs "may hold liable the person who creates or
25 develops unlawful content, but not [websites] who merely enable[] that content to be
26 posted online."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250,
27 254 (4th Cir. 2009).

28

The City argues that the scope of the CDA is not so broad as to automatically protect operators of websites from all legal actions related to their internet activities. (Opp'n 9.)   Instead, the CDA is limited to protection from liability related only to *publishing* activities.   Numerous courts have recognized that liability based on non-publishing conduct is not entitled to CDA protection.   *See, e.g.*, *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851 (finding that failure-to-warn claim was not barred by CDA because plaintiff did not seek to hold defendant liable as a "publisher or speaker"); *City of Chicago, Ill. V. Stubhub!, Inc.*, 624 F.3d 363, 366 (7th Cir. 2010) (fining that city's authority to tax resale of tickets by defendant was not superseded by CDA because the tax did not depend on who "publishes" the information or is a "speaker").

A district court in the Northern District of California explicitly rejected the argument Plaintiffs advance here.   In *Airbnb, Inc. v. City and County of San Francisco*, Judge Donato found that San Francisco's ordinance (which is similar to the Ordinance here in that it prohibits hosting platforms from booking transactions with hosts that are not city-approved) did not treat plaintiffs as the publishers or speakers of the rental listings provided by the hosts.   217 F. Supp. 3d 1066, 1072 (N.D. Cal. 2016).   The court found that San Francisco's ordinance "does not regulate what can or cannot be said or posted in the listings" and "creates no obligation on plaintiffs' part to monitor, edit, withdraw or block the content supplied by hosts."   *Id.* at 1072–73.   Instead, that ordinance "held plaintiffs liable for their own conduct, namely for providing, and collecting a fee for, Booking Services in connection with an unregistered unit."   *Id.* at 1073.

The court's reasoning in *Airbnb v. San Francisco*, is persuasive.   Like the San Francisco ordinance, the City's Ordinance does not penalize Plaintiffs' publishing activities; rather, it seeks to keep them from facilitating business transactions on their sites that violate the law.   This type of regulation falls outside the scope of the CDA protections.

1  For these reasons, the Court finds that Plaintiffs have not shown a likelihood of
2  success that the Ordinance violates the CDA.

3  **C.    FIRST AMENDMENT**

4  Plaintiffs argue that the Ordinance "indirectly" targets speech in a way that
5  violates the First Amendment.  First Amendment scrutiny applies where an economic
6  regulation "impose[s] a disproportionate burden on those engaged in First Amendment
7  activities," and where a "deterrent effect" on speech is an "inevitable result of the
8  government's conduct." (Mot. 19 (citing *Nunez ex rel. Nunez v. City of San Diego*, 114
9  F.3d 935, 950 (9th Cir. 1997) and *Buckley v. Valeo*, 424 U.S. 1, 64–65 (1976)).)
10  Plaintiffs contend that the Ordinance burdens speech because the effect of that law is
11  to preclude advertising.

12  The Ordinance, however, regulates conduct, not speech.   "[T]he First
13  Amendment does not prevent restrictions directed at commerce or conduct from
14  imposing incidental burdens on speech."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552,
15  567 (2001).  As the City points out, in the Ninth Circuit, the "threshold question is
16  whether conduct with a significant expressive element drew the legal remedy or the
17  ordinance has the inevitable effect of singling out those engaged in expressive
18  activity."  *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F. 3d 389, 408 (9th Cir.
19  2015) (internal quotation and citation omitted).  The Court finds that the conduct
20  banned by the Ordinance—booking transactions for residential properties not listed on
21  the City's registry—does not have such a "significant expressive element" as to draw
22  First Amendment protection.

23  The Ordinance does not limit Plaintiffs' ability to publish advertisements for
24  rentals that may violate the Ordinance.  Instead, the Ordinance prohibits hosts from
25  renting a unit that is not approved for transient occupancy on a short-term basis and
26  Plaintiffs from completing a booking transaction and receiving a fee for doing so.  A
27  booking transaction as defined and targeted by the Ordinance is a business transaction
28  to secure a short-term rental, not conduct with any significant expressive element.  *See*

*Airbnb*, 217 F. Supp. 3d at 1076.

Because the Court finds that the Ordinance does not implicate expressive activity or speech, Plaintiffs' First Amendment claims will not succeed.  Therefore, the Court finds that Plaintiffs have not established a likelihood of success with regard to this claim.

### V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction.  (ECF No. 57.)

**IT IS SO ORDERED.**

March 9, 2018

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**